IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JACOBS VEHICLE SYSTEMS, INC.,   )
                                )
            Plaintiff,          )
                                )
       v.                       )        1:12cv00181
                                )
ZHOU YANG,                      )
                                )
            Defendant.          )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Plaintiff, Jacobs Vehicle Systems, Inc. ("JVS"), alleges that Defendant, Zhou Yang ("Yang"), its former employee, misappropriated its trade secrets and other confidential information in violation of an employment agreement and North Carolina statutory and common law. Before the court is Yang's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(b)(7), and 19 (Doc. 12), and JVS's objection to a declaration submitted by Yang in support of his motion (Doc. 16). For the reasons set forth below, Yang's motion to dismiss will be granted in part and denied in part, and JVS's objection will be sustained in part and overruled in part.

## I.   BACKGROUND

The amended complaint, viewed in the light most favorable to JVS, alleges the following:

JVS is a Delaware corporation with its principal place of business in Bloomfield, Connecticut. (Doc. 9 ¶ 3.) It is a wholly-owned subsidiary of Danaher Corporation ("Danaher"), a global conglomerate with its headquarters in Washington, D.C. (Id. ¶ 7.) JVS primarily manufactures engine brakes, exhaust brakes, engine retarders, and engine retarding systems under such trademarks as "Jake Brake" and has secured many patents from the United States Patent Office. (Id. ¶¶ 11, 13, 15.) It also keeps some inventions confidential by choosing not to file patents. (Id. ¶ 15.)

In April 1998, JVS hired Yang as a senior engineer. (Id. ¶¶ 16, 24). Upon accepting employment, Yang signed an Employee Confidential and Proprietary Information Agreement (the "Agreement") by which he agreed not to publish, disclose, or use at any time during or subsequent to his employment "any information, knowledge or data of [JVS] or its customers which [he] may receive or develop during the course of [his] employment relation to inventions, discoveries, formulas, processes, machines, manufactures, compositions, computer programs, accounting methods, information systems or business of financial plans or reports, proprietary information or other[] matters which are of a secret[] and confidential[] nature." (Id. ¶¶ 18, 20.) The Agreement also barred Yang from disclosing at any time any matter "which relates to [JVS's] past, present,

2

and future practices, business affairs, and the results of services performed by [JVS] employees, as long as such information is not publicly disclosed by [JVS] or was known to [Yang] prior to the commencement of [his] employment with [JVS], including without limitation, any business plans, marketing strategies, processes, financial information, objectives, needs intentions or policies of [JVS's] manufacturing techniques and practices." (Id. ¶ 21.) Finally, Yang agreed that all inventions to which he contributed, whether or not patented, remain the exclusive property of JVS and that, upon termination for any reason, he must return drawings or blueprints of possible inventions that were confidential. (Id. ¶¶ 22–23.)

As a senior engineer at JVS, Yang contributed to several innovations or inventions. For each of these, he was required to fill out an Innovation Disclosure Form detailing the specific developments in which he was involved. (Id. ¶ 28.) As a result, he had access to JVS's confidential information, especially any innovations for which JVS chose not to file patent applications. (Id. ¶ 25.) Yang worked in this position at JVS for nearly eight years before leaving to take a job with another Danaher subsidiary, Gilbarco Veeder-Root ("Gilbarco"), in 2006. (Id. ¶ 26.) During his employment with Gilbarco, Yang continued to have access to JVS's confidential materials because

3

he submitted additional Innovation Disclosure Forms. (Id. ¶ 27.)

Yang resigned from Gilbarco in 2008. (Id. ¶ 31.) Eventually, he traveled to China and, although he continues to live in North Carolina, began working for his current employer, Shanghai Universoon Autoparts Co., Ltd. ("Universoon"), a direct competitor of JVS's sister company in China. (Id. ¶¶ 4, 33–34.) JVS alleges that Yang filed or caused to be filed sixteen Chinese patents, listed in Appendix D of its amended complaint, that are under Universoon's name but which use or are derived from protected JVS trade secret information. (Id. ¶¶ 36, 38.) Additionally, JVS alleges that Yang has applied for additional patents in China using protected JVS trade secrets obtained from Innovation Disclosure Forms or other confidential information to which he had access while at JVS. (Id. ¶ 39.)

On January 4, 2012, JVS sent a cease and desist letter to Yang, advising him that it believed him to be in violation of the Agreement and demanding that he cease his conduct and return all confidential materials in his possession. (Id. ¶¶ 41–42.) Yang responded by denying all of JVS's demands. (Id. ¶ 43.) Subsequently, JVS initiated this lawsuit.

JVS alleges that Yang committed several violations of North Carolina statutory and common law, including breach of contract (id. ¶¶ 45–52), misappropriation of trade secrets under the

4

North Carolina Trade Secrets Protection Act ("TSPA"), N.C. Gen. Stat. § 66-152 et seq. (id. ¶¶ 53-60), unfair and deceptive trade practices in violation of N.C. Gen. Stat. 75-1.1 (id. ¶¶ 66-71), conversion (id. ¶¶ 61-65), and civil conspiracy with Universoon. (Id. ¶¶ 72-75.) JVS also claims that Yang was unjustly enriched when he obtained compensation from Universoon in exchange for disclosing protected trade secrets and other confidential material. (Id. ¶¶ 75-80.)

Yang now moves to dismiss the action on several grounds. First, he contends that the case should be dismissed under the doctrine of *forum non conveniens* in favor of resolution in China. Second, he asserts that the amended complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19 for failure to join Universoon as a defendant. Third, he moves to dismiss for failure to state a claim upon which relief can be granted on the ground that the amended complaint fails to provide notice of what trade secrets he has allegedly misappropriated and, because the other claims necessarily depend on whether he misappropriated trade secrets or other protected material, all six counts should be dismissed. The motion has been fully briefed.

Each argument will be considered in turn.

## II.  ANALYSIS

### A.  Objection to Yang Declaration

As a preliminary matter, the court must consider JVS's objection to evidence Yang has submitted in support of his motion to dismiss.  Yang has filed a declaration with several attached documents written, either wholly or in part, in Chinese.  (Doc. 14.)  JVS objects to Yang's declaration to the extent it is submitted in support of the motion to dismiss pursuant to Rule 12(b)(6) on the grounds that it is improper extrinsic evidence, and because attached exhibits 1 through 4 are in Chinese and no translation was provided.  (Doc. 16.)  Yang argues that the documents are simply copies of those referenced in the amended complaint and demonstrate that Yang neither applied for nor owned the patents.  (Doc. 18.)

Courts may consider documents attached to a motion to dismiss "so long as they are integral to the complaint and authentic."  Sec'y of State for Def. v. Trimble Navig. Ltd., 484 F.3d 700, 705 (4th Cir. 2007).  As such, the court can consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice" without converting a motion to dismiss into one for summary judgment.  Sun Chem. Trading Corp. v. CBP Res., Inc., No. 1:01CV00425, 2004 WL 1777582, at *3 (M.D.N.C. July 29, 2004) (internal quotations and citation omitted).  Because

6

Universoon's patents are referenced in the amended complaint, the court may consider them. But Yang bears the burden on his motions to dismiss, and by submitting documents written in Chinese (without any translation) he is limited to whatever value they have to a court that does not read Chinese. The court will also consider Yang's declaration and attachments for the purpose of his motion to dismiss on the grounds of *forum non conveniens*. Thus, JVS's objection is sustained in part and overruled in part.

**B.** ***Forum Non Conveniens***

The court will next consider Yang's motion to dismiss the entire complaint on the grounds of *forum non conveniens*.

The common law doctrine of *forum non conveniens* applies when the alternative, more convenient forum is located in a foreign country. See <u>Am. Dredging Co. v. Miller</u>, 510 U.S. 443, 449 n.2 (1994). When considering whether to dismiss an action for *forum non conveniens*, the court must determine "whether the alternative forum is: 1) available; 2) adequate; and 3) more convenient in light of the public and private interests involved." <u>Jiali Tang v. Synutra Int'l, Inc.</u>, 656 F.3d 242, 248 (4th Cir. 2011). If the proposed alternative forum is not both available and adequate, the balancing of interests is unnecessary. <u>Id.</u> at 249. In considering the *forum non conveniens* factors, the court is not limited to the allegations

7

of the amended complaint but may rely on evidence presented by the parties.  See, e.g., Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd., 806 F. Supp. 2d 712, 724 (S.D.N.Y. 2011).  Here, Yang has filed a declaration in support of his motion.  (Doc. 14.)

Generally, the alternate forum is available if the defendant is "amenable to process" there.  Id. (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 n.22 (1981)).  Yang has satisfied this element by submitting his declaration statement (Doc. 14 ¶ 15) that he will consent to service of process in China.  See Jiali Tang, 656 F.3d at 250 ("Synutra satisfied that burden with affidavits stating that Plaintiffs were not barred by a statute of limitations and that Synutra would not contest service of process in China.").

"A foreign forum is adequate when '(1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.'"  Id. at 249 (quoting Fidelity Bank PLC v. N. Fox Shipping N.V., 242 F. App'x 84, 90 (4th Cir. 2007).  The moving party bears the burden of showing that such an adequate forum exists.  Id.  A number of Fourth Circuit cases have determined that China is an adequate forum for various types of legal disputes, see, e.g., id. at 250–51; Compania Naviera

8

_Joanna SA v. Koninklijke Boskalis Westminster NV_, 569 F.3d 189, 202-05 (4th Cir. 2009), nor does JVS argue that China would be inadequate or that it will be treated unfairly or deprived of any remedy if this case is heard there. JVS argues only that the interest factors do not weigh in favor of dismissing the case. Therefore, the court will consider China an adequate forum for the resolution of this dispute. _See_ _Compania Naviera Joanna_, 569 F.3d at 202 (citing _Piper Aircraft_, 454 U.S. at 254-55) (finding that this standard must be met in order to consider a forum inadequate).

The weighing of public and private interests is the heart of the _forum non conveniens_ inquiry. In order to weigh the interests in Yang's favor and dismiss the case, the court must find that "when weighed against [JVS's] choice of forum, the relevant public and private interests strongly favor" resolution of this dispute in China rather than in North Carolina. _Jiali Tang_, 656 F.3d at 246 (citing _Kontoulas v. A.H. Robins Co._, 745 F.2d 312, 315 (4th Cir. 1984)). Relevant factors include the following:

> (1) the ease of access to sources of proof; (2) the availability of compulsory process for securing the attendance of unwilling witnesses; (3) the costs of obtaining the attendance of witnesses; (4) the ability to view premises; (5) the general facility and cost of trying the case in the selected forum; and (6) the public interest, including administrative difficulties, the local interest of having localized

9

> controversies decided at home, and the interest of
> trying cases where the substantive law applies.

<u>Compania Naviera Joanna</u>, 569 F.3d at 200.

Yang contends that this case has very little connection with North Carolina. In fact, Yang's permanent address in Guilford County (Doc. 9 ¶ 4) appears to be the only mention of North Carolina in any of the parties' submissions. During the relevant period, Yang was either working for JVS in Connecticut, its sister company, Gilbarco (at which location is not readily apparent in the record), or Universoon, located in China. (<u>Id.</u> ¶ 4.) This case involves JVS's trade secrets and other confidential materials that have allegedly been misappropriated by Yang, to Universoon's benefit, and are reflected in Universoon's Chinese patents. While it is unclear whether Yang committed any of the alleged acts of misappropriation in North Carolina, it is unlikely that any third-party witnesses who would be deposed are currently in North Carolina -- they are likely either in Connecticut or China.

Considering all relevant factors, the court cannot say that they strongly favor China as a more convenient forum.[1] First, the sources of proof are mostly documents and the testimony of witnesses. The written documentation can be viewed in either

---

[1] Because Yang did not make an alternative motion to transfer to the District of Connecticut under 28 U.S.C. § 1404(a), this court considers only whether to dismiss on the grounds of *forum non conveniens* for re-filing in China.

forum, with some translation necessary whether the case is heard here or in China. Evidence of JVS's trade secrets that were allegedly misappropriated appears to exist in Connecticut, where Yang concedes he worked, not in China. Proof of misappropriation will depend (at least in part) on materials in Yang's possession (either here or in China), the Universoon patents (which allegedly indicate or are the product of the misappropriated information), and documents and witnesses in China. Thus, there are access issues no matter where the case is heard.

Second, the availability of compulsory process to require Chinese nationals to testify in this district is nonexistent, as such persons are beyond this court's subpoena power. Fed. R. Civ. P. 45; Litetronics Int'l, Inc. v. Tech. Consumer Prods., Inc., No. 03 C 5733, 2006 WL 2850514, at *2 (N.D. Ill. Sep. 28, 2006)(unpublished)(noting that Chinese parties are beyond the subpoena power of the court). As a result, many Universoon employees may be unavailable for testimony should the case be heard in North Carolina. While their testimony may be preserved by deposition, this factor favors China as the more convenient forum.

Similarly, the cost of obtaining the testimony of witnesses in this district may be high. But if the case were heard in China, JVS would be highly inconvenienced by the cost of

11

transporting all of its witnesses overseas.  This third factor, therefore, is essentially a wash.

No party has argued that the fourth factor – a premises view – is relevant in this case.  Indeed, the physical evidence consists of the Innovation Disclosure Forms, other documents, and Chinese and U.S. patents and applications.  Inspection of premises does not appear to be necessary.

The parties have not articulated any cost analysis – the fifth factor.  However, it would appear that the case would be less costly to try in the present forum.  Yang lives here, and JVS is located in Connecticut, which is much closer to this forum than to China.  Trying the action in China would work a hardship on both JVS and Yang.

Finally, the public interest factors do not strongly point toward China.  JVS seeks to protect its alleged trade secrets (developed in the United States) against a former employee who it claims has misappropriated them for the benefit of a JVS competitor in China.  While the controversy will likely affect Chinese interests because Universoon is competing against JVS's sister company in the Chinese brake market, it also affects the integrity of JVS's contractual and intellectual property interests in the United States.  The lawsuit alleges violations of North Carolina law – something with which this court is more familiar than a Chinese court.  Moreover, this district can

decide the case in a timely manner. It serves the public interest to ensure that a United States owner of intellectual property has a forum to seek redress for alleged misuse by another United States citizen living here. As a United States corporation, JVS has chosen to sue in the United States rather than in China. This choice is ordinarily given significant deference. See SAS Institute, Inc. v. World Programming, Ltd., 468 F. App'x 264, 266-67 (4th Cir. 2012) (noting that "'[T]he standard of deference for a U.S. plaintiff's choice of a home forum permits dismissal only when the defendant 'establish[es] such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent.'" (quoting Duha v. Agrium, 448 F.3d 867, 873-74 (6th Cir. 2006))).[2]

Thus, consideration of all the relevant factors does not strongly favor China over North Carolina as a more convenient forum for this dispute. Dismissal on the grounds of *forum non conveniens* is a harsh result in many cases, including this one. While there may be no truly "convenient" forum to resolve this dispute, on this record this court will not disturb JVS's choice of forum. See Fairchild Semiconductor Corp. v. Third Dimension

---

[2] See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (recognizing that "we ordinarily do not accord precedential value to our unpublished decisions" and that such decisions "are entitled only to the weight they generate by the persuasiveness of their reasoning" (citation omitted)).

<u>Semiconductor, Inc.</u>, 589 F. Supp. 2d 84, 93 (D. Me. 2008) ("I cannot conclude that the Chinese forum is preferable for resolving this entire license royalty dispute").

For the foregoing reasons, Yang's motion to dismiss on the grounds of *forum non conveniens* is denied.

## C. Failure to Join a Required Party

Yang next argues that the complaint should be dismissed because JVS failed to join Universoon as a defendant. Yang argues that Universoon is JVS's real target and this court cannot provide the relief requested – assignment of the Chinese patents at issue – without exercising jurisdiction over it. (Doc. 13 at 19-20.) JVS argues that Universoon is neither necessary (the current terminology is "required") nor indispensable, as JVS seeks no remedy against it but only alleges that Yang breached the Agreement and violated North Carolina law in misappropriating JVS's trade secrets. (<u>Id.</u>)

Federal Rule of Civil Procedure 19(a)(1) provides that a person is a required party if either

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or

> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

>> (i) as a practical matter impair or impede the person's ability to protect the interest; or

14

> (ii) leave an existing party subject to a
> substantial risk of incurring double, multiple,
> or otherwise inconsistent obligations because of
> the interest.

"Rule 19 creates a two-step inquiry: first, whether a party is necessary to a proceeding because of its relationship to the matter under consideration; and second, if a necessary party is unavailable, whether the proceeding can continue in that party's absence. If it cannot, the party is indispensable and the action should be dismissed." Teamsters Local Union No. 171 v. Keal Driveway Co., 173 F.3d 915, 918 (4th Cir. 1999) (citation omitted) (footnote omitted). Courts are loath to dismiss cases based on nonjoinder of a party, and thus "dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 441 (4th Cir. 1999).

Yang argues that the court will not be able to accord complete relief among the parties without Universoon because it owns the rights to the Chinese patents, which cannot be assigned if Universoon is not a party to the case. However, in this case JVS seeks only remedies against Yang: assignment of JVS's rights that Yang purports to enjoy; return of trade secret and protected materials Yang allegedly misappropriated; recovery of damages from Yang; an accounting of all proceeds Yang received as a result of unlawful conduct; and an injunction preventing

15

Yang from disclosing trade secrets to any third party, including Universoon. (Doc. 9 at 20-22.) These remedies do not depend on Universoon's presence to defend its rights in its patents. Universoon may have benefitted from Yang's alleged unlawful conduct, but JVS seeks no recovery against it, and it is not a required party.[3] To the extent Universoon may have knowledge of facts helpful to the case, the parties may conduct discovery in China. Therefore, Yang's motion to dismiss pursuant to Rule 12(b)(7) and Rule 19 will be denied.[4]

---

[3] The court need not therefore examine whether Universoon meets the higher standard of an indispensable party under Fed. R. Civ. P. 19(b).

[4] The court does not find Invesco Institutional (N.A.), Inc. v. Paas, Civ. No. 3:07-CV-0175-R, 2008 WL 4858210, at *11 (W.D. Ky. Nov. 7, 2008), upon which Yang relies, to require a different result. In that case, the plaintiff sought to enjoin its former employees from using its investment software and know-how (which was allegedly protected) with their new employer. After the plaintiff amended its complaint to seek to enjoin the employees from developing or using the new employer's software, the new employer moved to intervene under Rule 24, contending that the plaintiff's requested injunction against the employees might impair the new employer's ability to use and protect its software. The court permitted the new employer to intervene, but then found that the new employer was a required party under Rule 19(a)(1)(B) because its software on which the employees were working was an interest that could be impaired without its presence in the case. The court concluded that the new employer was indispensable and, because its presence would destroy the court's diversity jurisdiction, dismissed the action. Id. at *12-13.

   Here, JVS does not seek to enjoin Yang from working for Universoon (perhaps because Yang's covenant not to compete had a two year term and appears to have expired long ago (Doc. 9-3 ¶ H,)) nor does it seek to claim rights to any of Universoon's property. Whether JVS intends to do that in a subsequent action is not before the court. Rather, as relevant here, JVS has limited its requested relief to an assignment of any rights Yang claims to have and to an injunction preventing Yang from using JVS's trade secrets to benefit any third party, including Universoon. Although JVS may not be able to obtain entirely satisfactory relief by suing only Yang and not third parties,

**D.   Rule 12(b)(6) Motion**

Yang moves finally to dismiss the entire complaint for failure to state a claim upon which relief can be granted, largely on the ground that it fails to identify the alleged trade secrets with specificity.   Because the allegations of misappropriation are integral to all the causes of action of the complaint, Yang argues, the entire action should be dismissed for failure to meet this standard.   JVS contends that its allegations are sufficient for Yang to know what he is claimed to have misappropriated.

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.   Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"   <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).   A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 557).

---

that is a risk it may choose to take.   <u>See id.</u> at *10–11 (noting that the plaintiff need not seek relief against all potential tortfeasors).

## 1. Misappropriation of trade secrets

The elements of a *prima facie* case for misappropriation of trade secrets under North Carolina law are "(1) [the defendant] knows or should have known of the trade secret; and (2) [the defendant] has had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner." N.C. Gen. Stat. § 66-155. A trade secret is defined as

> business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
>
> a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
>
> b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Id. § 66-152(3). Misappropriation is the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." Id. § 66-152(1).

In cases involving trade secrets, the pleading standards require specificity because of the subject matter at issue. "To properly plead a claim for misappropriation of trade secrets

18

under the TSPA, 'a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur.'" River's Edge Pharm., LLC v. Gorbec Pharm. Servs., Inc., No. 1:10CV991, 2012 WL 1439133, at *13 (M.D.N.C. Apr. 25, 2012) (quoting Washburn v. Yadkin Valley Bank & Trust Co., 190 N.C. App. 315, 326, 660 S.E.2d 577, 585 (2008)).

Yang points to several cases that have found vague or overbroad allegations to be insufficient to state a TSPA claim. See, e.g., McElmurry v. Alex Fergusson, Inc., 2006 WL 572330 at *19 (M.D.N.C. 2006) (denying defendant's motion for summary judgment on the TSPA claim but agreeing with the defendant that "Plaintiff's claim to 'any information' that it had on Hatfield as a trade secret is not specific enough to alert Defendant or the court to what Plaintiff alleges Defendant has misappropriated"); Washburn, 190 N.C. App. at 327, 660 S.E.2d at 586 (granting motion to dismiss in favor of counterclaim defendant when the counterclaim plaintiff alleged vaguely that the defendant "'acquired knowledge of [the plaintiff's] business methods; clients, their specific requirements and needs; and other confidential information pertaining to [the plaintiff's] business,' . . . [that] 'confidential client information and confidential business information' constituted trade secrets as

19

defined by the TSPA[;] and that '[the plaintiff] believes [the defendants] used its trade secrets on behalf of AF Financial without [the plaintiff's] permission.'"); <u>Analog Devices, Inc. v. Michalski</u>, 157 N.C. App. 462, 468–69, 579 S.E.2d 449, 454 (2003) (finding that the plaintiff "has made general claims concerning areas of ADC production and design and requested a preliminary injunction that acts as an absolute bar to Maxim's future efforts in ADC research through its employees, Michalski and Karnik."); <u>but see</u> <u>ACS Partners, LLC v. Americion Group, Inc.</u>, No. 3:09cv464, 2010 WL 883663, at *10 (W.D.N.C. Mar. 5, 2010) (denying defendant's motion to dismiss because plaintiff's allegation that defendant misappropriated its pricing methodology was sufficiently particular).

Yang also relies heavily on <u>FMC Corp. v. Cyprus Foote Mineral Co.</u>, 899 F. Supp. 1477 (W.D.N.C. 1995), where the manufacturer of lithium batteries sued its former employee to prohibit the disclosure of trade secrets. The plaintiff claimed protectable trade secrets in the "design or modification" of: "battery-quality lithium metal cells," "battery-quality lithium foil extrusion dies and winding technology," "battery-quality lithium ingot casting and purification technology," "stamping techniques and technology for battery-quality lithium parts," "battery-quality lithium alloys," "as well as work with respect to . . . the lamination of current-collecting materials to

20

battery-quality lithium metals," and "the sealing and packaging of battery-quality lithium parts." Id. at 1480. The court found that this general description was not sufficiently particular and, if permitted, would effectively preclude the employee "from doing any work in his general area of expertise." Id.

JVS relies on River's Edge. There, the plaintiff hired the defendant to develop know-how for a specific type of product, but the defendant allegedly misappropriated what he was paid to develop before sharing the full extent of his innovations with the plaintiff. River's Edge, 2012 WL 1439133, at *13. Because the plaintiff was understandably unaware of the extent of the defendant's work developed for the plaintiff's benefit, the court found that the following contention as to misappropriation sufficient: "whatever [defendant] continues to claim ownership of, in relation to the dozens of projects it has undertaken for [plaintiff], is what [defendant] is accused of misappropriating." Based on the nature of the defendant's engagement, the court found, the defendant and the court had the ability to delineate what the defendant was accused of misappropriating. Id. at *13–14.

Neither FMC nor River's Edge is directly on point, but each has some application here. In FMC, the issue was not the sufficiency of the complaint, but rather whether the plaintiff

met the then-applicable standard for entry of a preliminary injunction. See id. at 1481. Yet, the court observed that the trade secrets claimed by the plaintiff "implicate almost every stage in the production of battery-quality lithium metals" that would effectively prohibit the employee from working at all. Id. at 1482. River's Edge involved a unique situation where the defendant's knowledge of the trade secrets was superior to that of the plaintiff. Here, JVS cannot claim that it does not know what Yang was doing while in its employ. FMC therefore is not helpful in resuscitating any general allegations of misappropriation in the amended complaint.

Here, JVS has articulated sixteen specific Universoon patents it believes contain information that derived from JVS's protected trade secrets and thus form the basis of JVS's claim that Yang misappropriated them. (Doc. 9 ¶¶ 47-50, 57.) Yang argues that this only encourages him to find the "needle in the patent application haystack." (Doc. 17 at 6.) But JVS is not required to disclose in detail that which it contends is trade secret protected. By providing Yang with the specific Chinese patents for specific products, JVS has put him on notice of the alleged trade secrets he is accused of misappropriating.[5] To

---

[5] Yang's argument that information can no longer be a trade secret if it is disclosed by JVS in a patent application is unpersuasive at this stage. See, e.g., Giasson Aerospace Sci., Inc. v. RCO Engineering, Inc., 680 F. Supp. 2d 830, 841 (E.D. Mich. 2010) (holding that where

22

this extent, therefore, JVS has provided a sufficiently specific description of the specific products/information it contends is subject to its trade secret claim.[6]

The amended complaint's boilerplate allegations do not stand on such a firm footing, however. They seek protection over such broad categories as "business or technical information," "customer specifications, formulas, patterns, programs, devices, compilations of information, methods or techniques, as well as information embodied in documentation relating to the invention, design, manufacture, formulation, research, development, or production of engine retarding systems, valve actuation systems, and/or engine brakes sold of [sic] offered for sale by JVS." (Doc. 9 ¶ 54.) Even given Yang's knowledge of his area of expertise at JVS, these general allegations do nothing to notify him of what JVS alleges is actually a protected trade secret that he has misappropriated. Accordingly, these allegations are insufficient to state a TSPA claim.

Yang's motion as to the misappropriation of trade secrets claim will therefore be granted in part and denied in part.

the claimed trade secrets are broader than the patented material, the existence of a trade secret is not necessarily foreclosed).

[6] There are mechanisms for obtaining additional specificity as to alleged trade secret violations, including a motion for more definite statement and contention interrogatories, pursuant to Federal Rules of Civil Procedure 12(e) and 33, respectively.

## 2.   Breach of Contract

Yang moves to dismiss the breach of contract claim on the ground that it incorporates the allegations of trade secret misappropriation that he contends are insufficiently pleaded.[7]

Yang's argument is unpersuasive.  JVS's breach of contract claim is broader than its TSPA claim; for example, it includes alleged breaches relating to Yang's claims of ownership in inventions and innovations he acknowledged in the Agreement were the exclusive property of JVS.  See Doc. 9 ¶¶ 22, 48-50.  In addition, to the extent the breach of contract claim rests on alleged disclosure or misuse of trade secrets, the court's finding that JVS has sufficiently pleaded misappropriation of trade secrets disposes of Yang's contention that the breach of contract claim must be dismissed.  Thus, JVS has pleaded a plausible breach of contract claim, having alleged that the parties entered into the Agreement, Yang subsequently breached that Agreement through several acts that include disclosure and misuse of trade secrets and other confidential material, and JVS suffered damages as a result.  At this stage, these allegations are sufficient to make a breach of contract plausible, and the

---

[7] Yang relies on Bioquell, Inc. v. Feinstein, Civil No. 10-2205, 2010 WL 4751709, at *6 (E.D. Pa. 2010) for the proposition that "in the context of a cause of action for breach of a confidentiality agreement or conversion," a plaintiff must identify the trade secrets misappropriated.  (Doc. 13 at 14.)  Bioquell is no more than a standard application of the heightened pleading standard to a trade secret claim under state law (Pennsylvania).

motion to dismiss will be denied.

### 3. Conversion

Yang argues in summary fashion that the amended complaint's allegations of conversion fail _Iqbal_'s plausibility standard.

North Carolina law defines conversion as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." _Griffith v. Glen Wood Co., Inc._, 184 N.C. App. 206, 213, 646 S.E.2d 550, 556 (2007) (internal quotation marks omitted) (emphasis deleted). JVS has properly pleaded conversion by alleging that Yang has possession of tangible paper items legally belonging to JVS, including Innovation Disclosure Forms, which he refuses to return to JVS. _See_ _J & J Sports Productions, Inc. v. Santillan_, No. 1:11CV1141, 2012 WL 6738316, at *4–5 (M.D.N.C. Dec. 28, 2012) (tangible property may be the subject of a conversion claim under North Carolina law). Therefore, the motion to dismiss with respect to the conversion claim will be denied.

### 4. Unfair and Deceptive Trade Practices

"To succeed on a claim for [Unfair and Deceptive Trade Practices], a plaintiff must prove: (1) defendant[] committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby."

25

Griffith, 184 N.C. App. at 217, 646 S.E.2d at 558 (internal quotation marks omitted); N.C. Gen. Stat. § 75-1.1. While breach of contract by itself is insufficient to state an unfair and deceptive trade practice claim, it may do so "if the breach is surrounded by substantial aggravating circumstances." Griffith, 184 N.C. App. at 217, 646 S.E.2d at 558. "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Id. (internal quotation marks omitted). JVS contends it has adequately pleaded an unfair and deceptive trade practice claim because it has alleged that Yang not only breached his employment agreement with JVS, but violated the TSPA by taking its confidential information to a direct competitor in the Chinese market in return for compensation.

"A violation of the Trade Secrets Protection Act constitutes an unfair act or practice under N.C. Gen. Stat. § 75-1.1." Medical Staffing Network, Inc. v. Ridgway, 194 N.C. App. 649, 659, 670 S.E.2d 321, 329 (2009). Because JVS has properly pleaded that Yang violated the TSPA, such conduct would constitute an unfair and deceptive trade practice as a matter of law. Thus, this court need not determine at this stage whether JVS has alleged an additional, independent unfair and deceptive trade practice claim premised on Yang's alleged breach of the

Agreement. Consequently, Yang's motion to dismiss the unfair and deceptive trade practice claim will be denied.

### 5. Civil Conspiracy

Yang argues that the conspiracy claim (Count V) should be dismissed because there is no separate civil cause of action for conspiracy under North Carolina law and "[w]hen the substantive claim falls, the civil conspiracy claim must also fall." (Doc. 13 at 20.)

To state a claim for civil conspiracy under North Carolina law, a plaintiff must allege a conspiracy, an overt wrongful act by one of the conspirators, and injury to the plaintiff. See Norman v. Nash Johnson & Sons' Farms, Inc., 140 N.C. App. 390, 416, 537 S.E.2d 248, 265 (2000). However, a plaintiff cannot use the same facts to form both the basis for a claim for conspiracy to commit certain torts *and* the basis for claims based on the underlying tort. Id. But, as a general rule, both North Carolina and the federal rules permit a plaintiff to plead alternative theories of recovery based on the same conduct and later make an election of remedies. Id.; Fed. R. Civ. P. 8(d)(2). Because each member of a civil conspiracy is jointly and severally liable for damages caused by the conspiracy, it is not necessary to join all co-conspirators. See, e.g., Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc., 723 F. Supp. 2d 676, 689 (D. Del. 2010).

27

JVS has alleged that Yang conspired with Universoon to violate both the TSPA and Yang's Agreement with JVS. Because Yang's motion to dismiss is predicated on its contention that the substantive claims should be dismissed, which the court has rejected, Yang's motion to dismiss the civil conspiracy claim will be denied as well.

### 6. Restitution for Unjust Enrichment

JVS's final claim is for unjust enrichment. Yang moves to dismiss this claim with only the general assertion that it "do[es] not meet Iqbal's plausibility standard." (Doc. 13 at 14.)

Under North Carolina law, a plaintiff asserting an unjust enrichment claim must show it conferred a benefit on another, the other party consciously accepted that benefit, and the benefit was not conferred gratuitously. Se. Shelter Corp. v. BTU, Inc., 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002). A claim for unjust enrichment is neither in tort nor in contract but is a claim in quasi-contract or contract implied in law, which is not based on a promise but is imposed by law to prevent unjust enrichment. Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988) (measure of damages is the reasonable value of the goods and services to the defendant).

Ordinarily, where there is an undisputed contract, the unjust enrichment claim should be dismissed. See Pan-Am.

28

Products & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 696 (M.D.N.C. 2011). But here Yang has not moved to dismiss on this ground. Nor has he filed an answer to admit the Agreement or acknowledged the validity of the Agreement in his declaration. Accordingly, the court will deny Yang's motion to dismiss this claim at this stage without prejudice to its being raised at the appropriate time should it become clear that the Agreement is undisputed and covers the same scope of any unjust enrichment claim.

## III. CONCLUSION

For the foregoing reasons,

IT IS THEREFORE ORDERED that JVS's objection to Yang's declaration (Doc. 16) is SUSTAINED IN PART and OVERRULED IN PART. The court will consider the declaration and exhibits for the purposes noted herein.

IT IS FURTHER ORDERED that Yang's motion to dismiss (Doc. 12) is GRANTED IN PART AND DENIED IN PART. It is GRANTED to the extent that the general allegations of the Trade Secret Protection Act claim identified in paragraph 54 of the amended complaint fail to state a claim upon which relief can be granted, and those allegations are DISMISSED WITHOUT PREJUDICE; in all other respects, Yang's motion is DENIED.

      /s/    Thomas D. Schroeder
United States District Judge

September 10, 2013