# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JACOBS VEHICLE SYSTEMS, INC., )
                         )
        Plaintiff, )
                         )
       v.                 )       1:12CV181
                         )
ZHOU YANG, )
                         )
        Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court upon Defendant Zhou Yang's ("Defendant" or "Yang") motion for summary judgment (Docket Entry 46) as to all of Plaintiff Jacobs Vehicle Systems, Inc.'s ("Plaintiff" or "JVS") claims against him. The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the court will recommend that the motion be granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiff filed suit in this court on February 22, 2012. (Docket Entry 1.) A first amended complaint was filed on May 15, 2012. (Docket Entry 9.) Defendant's motion to dismiss the amended complaint was granted in part and dismissed in part by order dated September 10, 2013. (Docket Entry 20.) By consent of the parties, a second amended complaint was filed on March 3, 2015. (Docket Entry 89.) While the motion for summary judgment was already pending at the time the second amended complaint was filed, the court will assume that the motion goes to the latest filed complaint.

Plaintiff asserts six claims for relief based upon Defendant's allegedly improper use of confidential information and trade secrets: (1) breach of contract not to use Plaintiff's proprietary and confidential information, (2) misappropriation of trade secrets, (3) conversion, (4) unfair and deceptive trade practices, (5) civil conspiracy, and (6) unjust enrichment. Plaintiff seeks damages and injunctive relief.

Defendant filed the instant motion for summary judgment on January 19, 2015, asserting that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. (Docket Entry 46.) At the same time, Defendant filed a motion to seal the exhibits to the motion for summary judgment and brief in support thereof. (Docket Entry 48.)[1]

## STATEMENT OF MATERIAL FACTS

Viewing the evidence in the light most favorable to Plaintiff, the material facts may be summarized as follows. Plaintiff JVS is a Delaware corporation with its principal place of business in Connecticut. It is also a wholly-owned subsidiary of Danaher Corporation ("Danaher"), a global conglomerate with its headquarters in Washington, D.C. JVS primarily manufactures engine brakes, engine retarders, and engine retarding systems for use on heavy-duty diesel-powered vehicles.

Defendant Yang, a United States citizen, began working as a senior engineer at JVS in April 1998 in Connecticut.[2] On July 6, 1998, Defendant signed an Employee Confidential

---

[1] Also pending are three motions to seal. (Docket Entries 48, 91 and 101.) These motions are addressed in a separate Order filed this same day.

[2] Defendant Yang currently resides in North Carolina.

and Proprietary Information Agreement with JVS and its entities.[3] This Agreement contained a two-year non-compete clause. (Agreement, § I, Pl.'s Mem. Opp. S.J., Ex. 5, Docket Entry 90-5.) In Section B of the Agreement, Defendant acknowledged that any innovations or inventions conceived by him would "be the exclusive property of the Company or its nominees whether or not patented or copyrighted." (*Id.* § B.) Additionally, in Section E of the Agreement, Defendant agreed

> not to publish or otherwise disclose (except as [his JVS] duties may require) either during or subsequent to [his] employment, or to use in any manner, any information, knowledge or data of [JVS] or its customers which [he] may receive or develop during the course of [his] employment relating to inventions, discoveries . . . proprietary information or other[] matters which are of a secret or confidential nature; [th]his included but is not limited to [his] own business enterprises, subsequent to his employment . . .

(*Id.* § E.) Another section of the Agreement requires Defendant to keep confidential the proprietary information and trade secrets of JVS. (*Id.* § G.)

Defendant was the inventor or co-inventor of twenty-one patents owned by JVS. While employed by JVS, Defendant developed several novel engine brake designs which are described in JVS Innovation Disclosure Forms, identified with a "DP" designation and number. (*See* Pl.'s Mem., Ex. 6, Yang Dep. 65, Docket Entry 90-6.). Each Innovation Disclosure Form submitted to JVS by Defendant resulted in additional compensation for him, above his salary. (*Id.* at 67.) In 2004, Defendant submitted Innovation Disclosure Form DP-564, which described and illustrated a toggle-based engine brake.

---

[3] The heading at the top of the Agreement lists Jacobs Vehicle Equipment Company ("JVEC") as the employer. The first paragraph of the Agreement references Jacobs Manufacturing Company, and a footnote states that "[a]ll references to the Jacobs Manufacturing Company also refer to its divisions, one of which is Jacobs Vehicle Equipment Company." (Agreement at 1, Docket Entry 90-5.) Defendant in his deposition admitted that he signed the Agreement knowing that his employer was JVS and that he abided by the Agreement. (Pl.'s Mem., Ex. 6, Yang Dep. at 58-60; 62, Docket Entry 90-6.)

3

Defendant worked at JVS as a senior engineer through April 2006. From April 2006 until June 2008, Defendant was employed at Gilbarco, Inc., another wholly-owned subsidiary of Danaher Corporation. On June 10, 2008, Defendant resigned from Gilbarco.

After leaving Gilbarco, Defendant began working for Shanghai Universoon Autoparts, Ltd. ("Universoon"), a direct competitor of JVS' sister company in China. Prior to Defendant's employment at Universoon, that company was not engaged in the manufacture of engine brakes, and indeed, once Defendant began working there, he was the only employee with engine braking experience. (Yang. Dep. 96; 98-99, Docket Entry 90-6.) Soon after Defendant's employment at Universoon, Universoon began manufacturing a toggle-based engine brake which placed the company in direct competition with JVS in the Chinese engine braking market.

JVS brought this action alleging that Defendant filed or caused to be filed sixteen Chinese patents under Universoon's name but which use or are derived from protected JVS trade secret information, a violation of the North Carolina Trade Secrets Protection Act ("NCTSPA"), N.C. Gen. Stat. § 66-152 *et seq*. JVS also alleges that Defendant's actions breached the agreement between the parties and amounted to unfair and deceptive trade practices in violation of N.C. Gen. Stat. 75-1.1 ("NCUDTPA"). Plaintiff also brings claims for conversion, civil conspiracy and unjust enrichment.

# DISCUSSION

## A. Motion for Summary Judgment

### 1. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then affirmatively must demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 247-48 (1986).

"[A]t the summary judgment stage, the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Similarly, "[c]redibility determinations . . . are jury functions, not those of a judge." *Id.* at 255. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." *Id.*; *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

5

Nevertheless, "permissible inferences must still be within the range of reasonable probablility, . . . and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted "where a reasonable jury could reach only one conclusion based on the evidence," or when "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489 (4th Cir. 2005). However, when "the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created," and judgment as a matter of law should be denied. *Id.* at 489-90.

### 2. Analysis

### a. Statute of Limitations

Before addressing the substantive arguments of the parties, it is necessary to address Defendant's argument that Plaintiff's claims are barred by the statutes of limitations. "North Carolina law controls procedural matters such as determining the statute of limitations." *Bardes v. Mass. Mut. Life Ins. Co.*, 932 F. Supp. 2d 636, 642 (M.D.N.C. 2013).

"An action for misappropriation of a trade secret must be commenced within three years after the misappropriation complained of is or reasonably should have been discovered." N.C. Gen. Stat. § 66-157. Defendant claims Plaintiff should have discovered the alleged misappropriation in 2008 when Defendant notified Plaintiff, through telephone calls and e-mails, that he was working on new engine brake designs, or at the very latest in January 2009 when the Chinese Patent application for the bridge brake design was published.

6

(*See* Def.'s Mem. at 26-27, Docket Entry 47.) However, at the very least, the facts, viewed in the light most favorable to Plaintiff, demonstrate a genuine issue of material fact as to when Plaintiff should have, or could have discovered that Defendant had misappropriated alleged trade secrets of JVS and that he was specifically working on toggle-based brake technology on behalf of Universoon. As noted by Plaintiff, the single Chinese patent application which Defendant asserts should have put Plaintiff on notice of the claim is irrelevant to the misappropriation claim because it concerns a "bridge brake," not the toggle-based engine brake which is the subject of the misappropriation claim. (*See* Pl.'s Mem. at 27, n.12, Docket Entry 93.) The e-mail correspondence relied upon by Defendant merely discusses Defendant "working on" new designs and does not provide specifics of his new work nor specifically mention a toggle-based brake design. Defendant's reliance on *Seatrax, Inc. v. Sonbeck Intern'l, Inc.*, 200 F.3d 358 (5th Cir. 2000) to support its argument that JVS should have been aware that Defendant was using JVS trade secrets in 2008 or 2009 is misplaced. The court in *Seatrax* was addressing the general statute of limitation in Texas, and the court determined that the discovery rule did not apply to misappropriation claims under the general statute. Here, there is a specific statute of limitations for claims under the NCTSPA, and the statute itself incorporates a discovery rule. Based upon the evidence before the Court, there are material issues of fact with respect to the application of the discovery rule that must be determined by a jury.

Plaintiff's breach of contract claim is likewise governed by a three year statute of limitations. N.C. Gen. Stat. 1-52(1). Generally speaking, a breach of contract claim accrues at the time of the breach. *Jewell v. Price*, 264 N.C. 459, 142 S.E.2d 1 (1965). The issue of

whether a cause of action is barred by the statute of limitations should be submitted to a jury "when the evidence is sufficient to support an inference that the limitations period has not expired." *Piles v. Allstate Ins. Co.*, 187 N.C. App. 399, 653 S.E.2d 181, 183 (2007).

Defendant relies on the "filing [of] patent applications for the toggle and other engine brake designs in the Summer and Fall of 2008" as the date of the breach, or injury. (Def.'s Mem. at 27, Docket Entry 49.) Indeed, Plaintiff alleges that Defendant breached the Agreement by "claiming ownership" over inventions owned by JVS in various patent applications. However, there is evidence in the record which shows that many, if not most, of the patent applications relied upon by Defendant were published and filed after February 22, 2009 (three years prior to the filing of the original complaint in this matter). Certainly there is sufficient evidence to permit the inference that the limitations period had not expired at the time this action was filed. As such, the court finds the statute of limitations issue should be submitted to the jury and that the motion for summary judgment on this ground should be denied.[4]

### b. Breach of Contract Claim

The Agreement at issue here was formed in Connecticut; the parties agree that the breach of contract claim is governed by Connecticut law. (*See* Def.'s Mem. at 20, Docket Entry 49; Pl.'s Mem. at 18, Docket Entry 93.) Thus, the elements for a breach of contract are "the formation of an agreement, performance by one party, breach of the agreement by

---

[4] The same analysis applies to Defendant's statute of limitations argument as to the conversion and unjust enrichment claims. Those state law claims also have a three year statute of limitations. N.C. Gen. Stat. §§ 1-52-(1), (5). Defendant does not argue that the NCUDTPA claim is time-barred.

the other party and damages." *Keller v. Beckenstein*, 117 Conn. App. 550, 558, 979 A.2d 1055, 1060 (2009).

Defendant argues that summary judgment is appropriate on the breach of contract claim for several reasons. First, Defendant asserts that there was no valid agreement between him and JVS because JVEC, the party named in the agreement, was not an "existing legal entity" at the time Defendant signed it. This argument is without merit. The evidence in the record clearly shows that Defendant understood, believed and agreed that the Agreement he entered into was between him and JVS. JVEC was JVS' predecessor-in-interest. The offer of employment, dated April 28, 1998, was on JVS letterhead and Defendant signed and accepted the offer. (Sec. Am. Compl., Ex. D, Docket Entry 89-4.) Additionally, the offer clearly stated that it was contingent upon Defendant signing a "Confidential & Proprietary Agreement," the document which Defendant signed and which is the subject of this claim. (*Id.*) In his deposition, Defendant acknowledged that he signed the Agreement knowing that his employer was JVS, not JVEC and that the company representative who signed the Agreement worked for JVS. (Yang Dep. at 58-60, Docket Entry 90-6.) Additionally, there is evidence in the record that Defendant himself relied on the Agreement on at least one occasion to obtain payment for work done on behalf of JVS. (*See* 11/26/08 Email from Yang to A. Stravelle-Schmidt, Ex. 7, quoting Agreement § E, Docket Entry 90-7.) Accordingly, Defendant cannot claim now that no valid agreement existed between him and JVS.

9

Defendant further argues that even if the Agreement is enforceable, he did not breach the terms of the Agreement. However, the record reveals disputed issues of material fact as to this issue, making summary judgment inappropriate.

The main invention at issue here is the toggle-based engine brake described and illustrated in Innovation Disclosure Form DP-564.[5] Defendant submitted the disclosure form to JVS, and in his deposition he testified that the innovations in DP-564 were the sole and exclusive property of JVS and were not to be disclosed to outside parties. Plaintiff contends that by later submitting patent applications (Yang Patent Nos. 7,789,065 and 7,909,017) which included illustrations of and submissions of a toggle-based engine brake design nearly identical to the device described in DP-564, Defendant breached the Agreement which provided that proprietary information was not to be disclosed to anyone outside of JVS.

Defendant argues that the United States Patents identified above (the '065 and '017 patents) were only meant to cover the specific 3D toggle embodiments contained in the illustrations and thus should not be construed to cover the JVS inventions. There is competing expert testimony on this point. Dr. John Schwoerer, an engineer at JVS, testified that Defendant's 3D toggle is a new invention compared to the DP-564 toggle design. (Schwoerer Dep. at 142-143, Docket Entry 50 at 26-27.) However, Defendant's own expert, Dr. Charles K. Salter, testified in his deposition that the Yang patented toggle-based engine brake includes essentially every functional element of the toggle-based engine brake of DP-564. (*See* Salter Dep. at 121-27, Pl.'s Mem., Ex. 8, Docket Entry 90-8.) Dr. Charlton's

---

[5] Plaintiff has abandoned any claim with regard to another invention, DP-434. (*See* Pl.'s Mem. at 1, Docket Entry 90.)

expert testimony was that Defendant's patent claims are not limited to the specific 3D toggle embodiments. (*See* Charlton Rebuttal at 8-12, Pl.'s Mem., Ex. 17, Docket Entry 90-17.) Dr. Charlton also stated that "it is clear that the invention being protected by [the] Yang patent . . . is exactly that disclosed by Yang in DP-564." (*Id.* at 9.) Accordingly, because there are genuine issues of material facts, summary judgment is not proper on this claim.

Finally, Defendant contends that Plaintiff's breach of contract claim is preempted by federal patent law. This argument is without merit. Generally, a state law is preempted under the Supremacy Clause of the Constitution "where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990). While patent law is a matter of federal law, here Plaintiff is not bringing a claim for patent infringement. Rather, Plaintiff alleges that Defendant breached the contract between the parties by claiming ownership over information and designs which are the exclusive property of JVS. The state law claims brought by Plaintiff are not inconsistent with federal law, nor do they endanger any Congressional objectives with regard to patent laws. *See Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1473 (4th Cir. 1998) (court held that that state court adjudication of claim for intentional interference with contractual relations that implicated patent law issues was not preempted, noting that protecting contractual relations was primarily the realm of state law.) There may be a question of fact as to whether Defendant's actions constituted a breach, but the claim is not preempted simply because Defendant later obtained patents over the design. *See Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 493 (1974) (holding that an Ohio trade secret law was not preempted by federal patent law).

11

The court recommends that summary judgment be denied as to the breach of contract claim.

## c. Misappropriation of Trade Secrets Claim

Under the North Carolina Trade Secrets Protection Act, to prevail on a claim for misappropriation of trade secrets claim, a party must show that "(1) [the defendant] knows or should have known of the trade secret; and (2) [the defendant] has had a specific opportunity to acquire it for disclosure of use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner." N.C. Gen. Stat. § 66-155. A trade secret is defined as

> business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique or process that:
>
> a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
>
> b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.* § 66-152(3). Misappropriation is the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." *Id.* § 66-152(1).

The threshold question in any trade secrets case is whether the information obtained constitutes a trade secret. *Combs & Assocs., Inc. v. Kennedy*, 147 N.C. App. 362, 369, 555 S.E.2d 634, 639 (2001). In making this determination, courts consider: (1) the extent to

which information is known outside the business; (2) the extent to which it is known to employees and others inside the business; (3) the measures taken to guard secrecy of the information; (4) the value of information to business and its competitors; (5) the effort or money expended in developing the information; and (6) the ease or difficulty others would have in properly acquiring the information. *Byrd's Lawn & Landscaping, Inc. v. Smith*, 142 N.C. App. 371, 375, 542 S.E.2d 689, 692 (2001). To survive a motion for summary judgment, a plaintiff must show facts that would allow a reasonable finder of fact to conclude that the information at issue was not "generally known or readily ascertainable" and that the plaintiff made reasonable efforts to maintain the information's secrecy. *Area Landscaping, LLC v. Glaxo-Wellcome, Inc.*, 160 N.C. App. 520, 525, 586 S.E.2d 507, 511 (2003).

The parties disagree as to the nature of the trade secret claimed by JVS. In its response to interrogatories, Plaintiff identifies the embodiment of the toggle-based engine brake illustrated in DP-564 as a JVS trade secret. (JVS Resp. to First Set of Interrogatories at 4, Docket Entry 90-15 (redacted version), Docket Entry 96 (under seal).) Defendant contends that DP-564 only shows the components of a generic toggle for engine braking which cannot be a trade secret because it has been used for valve actuation for over 100 years. Defendant contends that Plaintiff's idea for the toggle was not, and could not be, a secret because all of the components of the design were already known.

"[T]he hallmark of a trade secret is not its novelty but its secrecy." *Avtec Syss., Inc. v. Peiffer*, 21 F.3d 568, 575 (4th Cir. 1994) (interpreting Virginia statute similar to the NCTSPA). "Although the subject of a trade secret may be novel in the sense that it is something generally unknown in the trade or business, novelty, in the patent law sense, is not required

for a trade secret." *Decision Insights, Inc. v. Sentia Grp., Inc.*, 311 F. App'x 586, 592 (4th Cir. 2009) (unpublished); *see also Kewanee Oil*, 416 U.S. at 476 ("Novelty, in the patent law sense, is not required for a trade secret."). "Whether or not a trade secret exists is a fact-intensive question to be resolved at trial." *Decision Insights*, 311 F. App'x at 592.

Here, a genuine issue of material fact exists as to whether the toggle-based engine brake concept embodied in DP-564 was a trade secret. In spite of Defendant's contention that the toggle sketch in DP-564 is just a generic toggle actuator sketch, "*i.e.*, two links, the hinge, the input force, the output force, [and] possible return spring force," there is evidence in the record, from Defendant's own deposition testimony, that he considered the design to be novel and patentable at the time he submitted it. (*See* Yang Dep at 167-168; 186, Docket Entry 90-6). Indeed, in the DP-564 innovation disclosure form, Defendant represented to JVS that the bleeder brake devices contained in the submission were inventions and trade secrets. (Docket Entry 90-9 (redacted version), Docket Entry 94 (under seal).) There is evidence that JVS took measures, through the Employee Confidential and Proprietary Agreement, to guard the secrecy of such inventions. This Agreement specifically states that Defendant may not publish or disclose any proprietary information obtained during the course of his employment to third parties and requires Defendant to keep such information confidential. Defendant admitted that he was compensated over and above his regular salary for each innovation disclosure form he submitted to JVS. (Yang Dep. 67, Ex. 6, Docket Entry 90-6.)

Defendant further asserts that two years after he ceased working at JVS he designed a new, unique toggle mechanism to actuate an engine brake, representing a new invention.

14

Defendant contends that the improvements he added to the DP-564 concept include a (1) 3D toggle with spherically nested links; (2) a toggle which is not pinned to a fixed upper surface; (3) a toggle actuated with a cam; (4) a toggle with a lash adjuster; (5) a toggle integrated into a rocker arm; (6) a toggle with a larger contact area; and (7) a toggle used for compression release engine braking rather than for bleeder brakes. (*See* Def.'s Mem. at 8-9, Docket Entry 49.) The court finds, however, that there is a genuine issue of material fact as to whether these "improvements" constitute a new invention so as to preclude a claim for misappropriation of trade secrets.

Dr. Schwoerer testified that Defendant's new 3D toggle design represented a new invention. (Schwoerer Dep. at 142-43, Docket Entry 50 at 26-27.) Dr. Schwoerer specifically mentioned the pinless linkage in the 3D design which he viewed to be an improvement over the three-pin toggle of DP-564. (*Id.*) However, another expert, Dr. Salter, testified that all of the essential elements of the patented toggle design were included in the DP-564 design. Indeed, to a layman's eye, the illustrations of the two designs appear very similar. (*See e.g.*, Fig. 15A, Pl.'s Mem. at 2, Docket Entry 90 (redacted version), Docket Entry 93 (under seal).) Moreover, testimony of Plaintiff's expert indicates that the patents themselves do not include any of the asserted improvements other than a lash adjuster, which all the experts agree is a requirement for every engine brake. (*See* Charlton Report at 12, Docket Entry 90-10.) *See BSN Medical, Inc. v. Parker Medical Assoc. LLC*, No. 3:09cv15, 2011 WL 5509030 at *16 (W.D.N.C. Nov. 17, 2011) (finding genuine issue of fact as to whether process used by defendant was derivative of the process plaintiff claimed as a trade secret).

Additionally, should a jury find that the brake design in DP-564 was a trade secret, it will be up to the jury to determine whether Defendant misappropriated the design under the NCTSPA. The court finds that, when reviewing the evidence in the light most favorable to Plaintiff, Plaintiff has presented enough evidence to withstand Defendant's summary judgment motion on this claim. Accordingly, the court recommends that summary judgment on this claim be denied.

### d. Conversion Claim

Plaintiff asserts a claim under state law for conversion based on Defendant's alleged continued possession of tangible property belonging to JVS, in the form of Plaintiff's "Innovation Disclosure Forms, formulas, product specifications, contracts, customer or potential customer lists." (Sec. Am. Comp. ¶ 63, Docket Entry 89.) Under North Carolina law, conversion is defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Griffith v. Glen Wood Co., Inc.*, 184 N.C. App. 206, 213, 646 S.E.2d 550, 556 (2007). Where the party alleged to have wrongfully converted property obtained the property pursuant to a contract, conversion requires more than mere possession:

> [D]emand and refusal are necessary to the existence of the tort. When demand is made, an absolute, unqualified refusal to surrender, which puts the plaintiff to the necessity of force or a lawsuit to recover his own property, is of course a conversion.

*TSC Research, LLC v. Bayer Chems. Corp.*, 552 F. Supp. 2d 534, 542 (M.D.N.C. 2008) (citing *Hoch v. Young*, 63 N.C. App. 480, 483, 305 S.E.2d 201, 203 (1983)).

Defendant argues that he is entitled to summary judgment on this claim because (1) only goods and personal property, not "intangible interests," are properly the subject of a conversion claim (Def.'s Mem. at 24, Docket Entry 49); (2) the inventions Plaintiff claims Defendant converted are "general, publicly known concepts . . . and thus not properly subject to conversion claims (*id.*); and (3) Plaintiff's non-toggle property rights are fully covered by its patents and thus its conversion claim is preempted (*id.* at 24-25).

Defendant contends that the property which is subject to this conversion claim constitutes intangible interests. However, United States District Judge Thomas Schroeder, in previously denying Defendant's motion to dismiss, noted that JVS' conversion claim is based on Defendant's continued possession of "tangible paper items legally belonging to JVS, including Innovation Disclosure Forms, which he refuses to return to JVS." (Order at 25, Docket Entry 20.) Defendant is correct "that intangible business assets such as business expectancies and good will may not be the proper subject of a claim for conversion under North Carolina's common law." *Edmondson v. Am. Motorcycle Ass'n, Inc.*, 7 F. App'x 136, 148 (4th Cir. 2001). Here though, Plaintiff clearly alleges that Defendant possesses tangible property belonging to Plaintiff, not just intangible interests. (*See* Sec. Am. Compl. ¶¶ 63-64, Docket Entry 89.)

There is evidence in the record, in the form of correspondence between counsel for JVS and Defendant prior to the filing of the lawsuit, showing that counsel requested that Defendant return to Plaintiff "all of [Plaintiff's] confidential information in whatever form it may be recorded . . ." (Letter dated Jan. 4, 2012, Sec. Am. Compl., Ex. 7, Docket Entry 89-7.) The language of the letter clearly identifies "business papers," including drawings,

blueprints, manuals, and notes, which constitute tangible property. In his response to the letter, Defendant did not deny that he has such information in his possession. (*See* Letter dated Jan. 13, 2012, Sec. Am. Compl., Ex. 8, Docket Entry 89-8.) It is clear that as to such tangible property, there are genuine issues of material fact as to whether Defendant still has such property in his possession. Plaintiff clearly demanded return of the property prior to filing the lawsuit, and Defendant did not deny that he had such material. In discovery, Defendant did not deny that he took the materials, only that he currently "has no such documents within his possession, custody or control." (*See* Responses to JVS First Document Request, Req. No. 2, Ex. 20.)

Defendant also relies on his declaration submitted in support of summary judgment. In the declaration, he states that he "did not take any JVS innovation disclosure forms when [he] left JVS [and] did not retain any copies of any [such] forms or any notes regarding any JVS innovation disclosure forms from [his] employment with JVS." (Yang Decl., Def.'s Reply, Ex. 4, Docket Entry 100-4.) Although Defendant unequivocally states that he did not take the innovation disclosure forms or notes pertaining to the forms, the Declaration does not address any other confidential information which Plaintiff alleges Defendant has or had in the past. While this is a closer question than the other claims (except for the conspiracy claim which the court is recommending be dismissed), in the court's view, there is still a genuine issue of material fact as to whether Defendant took copies of the design, along with any notes, diagrams or other papers, with him when he left his employment at JVS.[6]

---

[6] Defendant also argues that the conversion claim is without merit because the concepts are generally known and not trade secrets or the claim is preempted under patent law. These arguments are without merit. The court has already recommended that summary judgment be denied on the

### e. Conspiracy Claim

Plaintiff contends that Defendant conspired with Universoon to commit an unlawful act, *i.e.*, to convert Plaintiff's proprietary information and use it for the benefit of Defendant and Universoon. Under North Carolina law, to succeed on a civil conspiracy claim, a plaintiff must show (1) an agreement between two or more persons; (2) to do an unlawful act or to a lawful act in an unlawful way that results in damage to the claimant *See Dalton v. Camp*, 138 N.C. App. 201, 213, 531 S.E.2d 258, 266 (2000).

In this case, Plaintiff fails to offer proof that an agreement existed between Defendant and Universoon that would support a civil conspiracy claim. While Plaintiff claims that Universoon and Defendant entered into an employment agreement and a technical cooperation agreement, that Defendant designed a competing engine brake for Universoon, that Defendant has assisted Universoon in filing patent applications and that Universoon paid Defendant, there is no evidence that there was a common scheme or agreement between Universoon and Defendant to cause harm to Plaintiff. Plaintiff's evidence, not its mere allegations, only shows that Defendant entered into an employment relationship with Universoon. The evidence is simply insufficient to raise more than a "suspicion or conjecture" of a civil conspiracy. *See Swain v. Elfland*, 145 N.C. App. 383, 388, 550 S.E.2d 530, 534 (2001) ("Although an action for civil conspiracy may be established by circumstantial evidence, sufficient evidence of the agreement must exist to create more than a suspicion or conjecture in order to justify submission of the issue to the jury.") (citations

---

trade secret claim because there is a genuine issue of material fact as to whether in fact there were trade secrets and if so whether Defendant wrongfully misappropriated them. *See*, *supra* at 11-16. Additionally, the court has found that preemption does not apply under the facts of this case. *Supra* at 11.

omitted). The court therefore recommends that summary judgment be granted to Defendant on Plaintiff's civil conspiracy claim.

### f. Unfair and Deceptive Trade Practices Act and Unjust Enrichment Claims

"To succeed on a claim for [Unfair and Deceptive Trade Practices], a plaintiff must prove: (1) defendant committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." *Griffith*, 184 N.C. App. at 217, 646 S.E.2d at 558 (internal quotation marks omitted); N.C. Gen. Stat. § 75-1.1. As to the claim for unjust enrichment, under North Carolina law, a plaintiff asserting such a claim must show that it conferred a benefit on another, the other party consciously accepted the benefit, and the benefit was not conferred gratuitously. *SE Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002).

Defendant argues that summary judgment is proper on these claims because "[a]ll of JVS's inventions at issue in this case are publicly known [and Defendant's] use of public information cannot form the basis for any state law claim." (Def.'s Mem. at 25, Docket Entry 49.) Essentially, Defendant argues that if a trade secrets claim fails, the derivative state law claims must also fail. *Id., citing Fenton Golf Trust v. Cobra Golf, Inc.*, No. 97 C 247, 1998 U.S. Dist. LEXIS 8452, at *23-24 (N. D. Ill. May 28, 1998). Because this court has found that a genuine issue of material fact exists as to the misappropriation of trade secrets claim, however, the state law claims may go forward. Accordingly, the court recommends that summary judgment be denied as to the NCUDTPA and unjust enrichment claims.[7]

---

[7] Defendant briefly argues that these claims are pre-empted because they are based on Defendant's patents. (*See* Def.'s Mem. at 25, Docket Entry 49.) The court has previously found that the claims are not preempted. (*See supra* at 11). Defendant's preemption argument is without merit.

### g. Damages

Defendant argues that Plaintiff has not demonstrated any evidence to support an award of damages on JVS' misappropriation of trade secrets claim. The Court disagrees.

The NCTSPA provides that actual damages may be recovered for the misappropriation of a trade secret. *See* N.C. Gen. Stat. § 66-154 (b). Actual damages under the North Carolina statute are measured by the economic loss or the unjust enrichment caused by the misappropriation, whichever is greater. *See id.*

Plaintiff contends, and there is record evidence to support the contention, that once Universoon began manufacturing and selling at a lower price a competing brake based on the JVS design, JVS was forced to lower the sales price on its brake. Additionally, sales of the JVS brake have significantly decreased since Universoon entered the market. (*See* Pl.'s Mem., Ex. 2, Perkins Tr. 283; 297-298; 335; 409, Docket Entry 90-2 (redacted version), Docket Entry 98 (under seal).) Dr. Robert Fenili, Plaintiff's expert on damages, has opined that Defendant's misappropriation of the JVS trade secret technology has caused JVS at least $1,467,111 in economic losses. (*See* Pl.'s Mem., Ex. 22, Expert Report at 11, Docket Entry 90-22 (redacted version), Docket Entry 97 (under seal).) Thus, if a jury were to find that but for Defendant's misappropriation, Universoon would not be selling an engine brake containing JVS technology and in direct competition with JVS, there is evidence from which the jury could find that JVS has suffered damages. Accordingly, the court recommends that summary judgment on this ground be denied.

## CONCLUSION

For the reasons stated herein, **IT IS RECOMMENDED** that Defendant's motion for summary judgment (Docket Entry 46) be **GRANTED** in part and **DENIED** in part. More specifically, it is recommended that the motion be granted as to the civil conspiracy claim and the motion be denied as to all other claims.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
July 31, 2015